*267]   *AT NISI PRIUS, IN PHILADELPHIA, NOVEM-
                   BER, 1805.

CORAM—YEATES, SMITH AND BRACKENRIDGE, JUSTICES.

## Respublica *against* Joseph Dennie.

The court will not question the jury before they are sworn, whether they have prejudged the cause, but will admonish them if they do not stand indifferent to either party, that they should disclose it to the court.

It is no libel to publish the truth from good motives, and for justifiable ends, though it reflect on government or the magistrates. *Aliter*, when done with an evil intent.

AN indictment was found in July sessions 1803, in the Mayor's Court for a libel, which was removed into the Supreme Court in December term 1803.

The prosecution was ably conducted by Mr. M'Kean, the attorney general; and the defence was supported with equal ability, by Messrs. Ingersoll and Hopkinson, who went fully and at large into a defence of the freedom of the press, and the rights of citizens to communicate their thoughts and opinions on all subjects of a political nature, for public information.

Previous to the jury being sworn, the counsel for the defendant stated, that they had received information, that some of the jurors impanelled had declared their opinions in ward meetings on the present publication; and moved the court, that the question should be proposed to them before they were sworn, if they had so declared themselves; as was done in the second trial of

[Respublica *v.* Dennie.]

John Fries, on the prosecution of the United States. Printed Trial, 177. This was done on the trial of Lord BALMERINO, for a libel in Scotland. 1 St. Tri. 470–1.

The motion was opposed by the attorney general, who contended, that it was not proper that such question should be put to the jurors, as it involved discredit on them, and that no such practice had ever obtained in the English courts.

The court refused to put the question to the jurors; but they publicly declared,* that if any of the jurors in the box did not feel themselves indifferent to the defendant, or had prejudged the cause, or had so declared themselves, it was their duty to mention it to the court, to be judged of by them. It must be the wish of every honest mind, that a fair and impartial trial should take place.

The evidence being closed, and the counsel having been fully *heard on both sides, YEATES, J. delivered the charge to the jury, substantially as follows:  [268*

We possess no political characters on this bench. We are bound by every tie of religion and duty to see that the laws of the country shall be the rule of conduct, and that justice shall flow in her usual and accustomed channels, without respect to persons.

The defendant stands indicted, as a factious and seditious person, of a wicked mind, and unquiet and turbulent disposition and conversation, seditiously, maliciously and wilfully intending, as much as in him lay, to bring into contempt and hatred, the independence of the United States, the constitution of this commonwealth and of the United States, to excite popular discontent and dissatisfaction against the scheme of polity instituted and upon trial in the said United States, and in the said commonwealth, to molest, disturb and destroy the peace and public tranquility of the said United States, and of the said commonwealth, to condemn the principles of the revolution, and revile, depreciate and scandalize the characters of the revolutionary patriots and statesmen, to endanger, subvert and totally destroy the republican constitutions and free governments of the said United States, and this commonwealth, to involve the said United States, and this commonwealth in civil war, desolation and anarchy, and to procure by art and force, a radical change and alteration in the principles and forms of the said constitutions and governments, without the free will, wish and concurrence of the people of the said United States, and this commonwealth respectively, and to fulfil, perfect and bring to effect his wicked, seditious and detestable intentions aforesaid, he the said Joseph Dennie, on the 23d of April 1803, at the city of Philadelphia, falsely, maliciously, factiously and seditiously did make, compose, write and pub-

*The same thing was done by Lord Chief Justice TREBY, on the trial of Peter Cook, for high treason in 1696, 4 St. Trials, 749.

[Respublica *v.* Dennie.]

lish the following libel, to wit : " A democracy is scarcely tolerable
" at any period of national history.    Its omens are always sinister,
" and its powers are unpropitious.    With all the lights of expe-
" rience blazing before our eyes, it is impossible not to discover
" the futility of this form of government.    It was weak and
" wicked at Athens, it was bad in Sparta, and worse in Rome.
" It has been tried in France, and terminated in despotism.    It
" was tried in England, and rejected with the utmost loathing
" and abhorrence.    It is on its trial here, and its issue will be
" civil war, desolation and anarchy.    No wise man but discerns
" its imperfections, no good man but shudders at its miseries, no
" honest man but proclaims its fraud, and no brave man but
" draws his sword against its force.    The institution of a scheme
" of polity so radically contemptible and vicious, is a memorable
" example of what the villainy of some men can devise, the
*269]   " *folly of others receive, and both establish in despite of
" reason, reflection, and sensation."

This publication is stated to have been made in a certain
weekly paper called the *Port Folio ;* and the act is charged in
the indictment to have been committed " in manifest contempt
" of the constitution and laws of the said United States and this
" commonwealth, in derogation of the national independence,
" reputation, and honor, to the evil example of all others in the
" like case offending, and against the peace and dignity of the
" commonwealth of Pennsylvania."

Is the defendant guilty or not of the facts and intentions charg-
ed, is the question to be tried.    The case is admitted to be of
high moment.

The 7th section of the 9th article of the constitution of the
state, must be our guide upon this occasion ; it forms the solemn
compact between the people and the three branches of the gov-
ernment, the legislative, executive and judicial powers.    Nei-
ther of them can exceed the limits prescribed to them respec-
tively.    To this exposition of the public will, every branch of
the common law, and of our municipal acts of assembly must
conform ; and if incompatible therewith, they must yield and
give way.    Judicial decisions cannot weigh against it when re-
pugnant thereto.    It runs thus :

" The printing presses shall be free to every person, who un-
" dertakes to examine the proceedings of the legislature, or any
" branch of government ; and no law shall ever be made to re-
" strain the right thereof.    The free communication of thoughts
" and opinions is one of the invaluable rights of man ; and every
" citizen may freely speak, write or print on any subject, being
" responsible for the abuse of that liberty.    In prosecutions for
" the publication of papers, investigating the official conduct of
" officers, or men in a public capacity, or where the matter pub-
" lished is proper for public information, the truth thereof may
" be given in evidence : and in all indictments for libels, the

"jury shall have a right to determine the law and the facts, "under the direction of the court, as in other cases."

Thus it is evident, that legislative acts, or of any branch of the government, are open to public discussion ; and every citizen may freely speak, write or print on any subject, but is accountable for the abuse of that privilege.    There shall be no licenses of the press.    Publish as you please in the first instance without control ; but you are answerable both to the community and the individual, if you proceed to unwarrantable lengths.    No alteration is hereby made in the law as to private men, affected by injurious publications, unless the discussion be proper for public information.    But "if one uses the weapon of truth " *wantonly, for disturbing the peace of families, he is [*270 " guilty of a libel."    *Per* general Hamilton in Crosswell's trial, pa. 70.    The matter published is not proper for public information.    The common weal is not interested in such a communication except to suppress it.

What is the meaning of the words "being responsible for the abuse of that liberty," if the jury are interdicted from deciding on the case ?    Who else can constitutionally decide on it ?    The expressions relate to and pervade every part of the sentence. The objection, that the determination of juries may vary at different times, arising from their different political opinions, proves too much.    The same matter may be objected against them, when party spirit runs high, in other criminal prosecutions.    But we have no other constitutional mode of decision pointed out to us, and we are bound to use the method prescribed.

It is no infraction of the law to publish temperate investigatons of the nature and forms of government.    The day is long past, since Algernon Sidney's celebrated treatise on government cited on this trial, was considered as a treasonable libel.    The enlightened advocates of representative republican government pride themselves in the reflection, that the more deeply their system is examined, the more fully will the judgments of honest men be satisfied, that it is the most conducive to the safety and happiness of a free people.    "Such matters are proper for pub- "lic information."    But there is a marked and evident distinction between such publications, and those which are plainly accompanied with a criminal intent, deliberately designed to unloosen the social band of union, totally to unhinge the minds of the citizens, and to produce popular discontent with the exercise of power, by the known constituted authorities.    These latter writings are subversive of all government and good order.    "The " liberty of the press consists in publishing the truth, from good "motives and for justifiable ends, though it reflects on government or on magistrates."    *Per* general Hamilton in Crosswell's trial, pa. 63, 64.    It disseminates political knowledge, and by adding to the common stock of freedom, gives a just confidence to every individual.    But the malicious publications which I have

reprobated, infect insidiously the public mind with a subtle poison, and produce the most mischievous and alarming consequences, by their tendency to anarchy, sedition, and civil war. We cannot, consistently with our official duty, pronounce such conduct dispunishable. We believe that it is not justified by the words or meaning of our constitution. It is true, it may not be easy in every instance, to draw the exact distinguishing *271] line. To the jury, it *peculiarly belongs to decide on the intent and object of the writing. It is their duty to judge candidly and fairly, leaning to the favourable side, where the criminal intent is not clearly and evidently ascertained.

It remains therefore under our most careful consideration of the 9th article of the constitution, for the jury to divest themselves of all political prejudices (if any such they have) and dispassionately to examine the publication in the *Port Folio*, which is the ground of the present prosecution. They must decide on their oaths, as they will answer to God and their country, whether the defendant, as a factious and seditious person, with the criminal intentions imputed to him, in order to accomplish the objects stated in the indictment, did make and publish the writing in question. Should they find the charges laid against him in the indictment to be well founded, they are bound to find him guilty. They must judge for themselves on the plain import of the words, without any forced or strained construction of the meaning of the author or editor, and determine on the correctness of the inuendos. To every word they will assign its natural sense, but will collect the true intention from the context, the whole piece. They will accurately weigh the probabilities of the charge against a literary man. Consequences they will wholly disregard, but firmly discharge their duty. Representative republican governments stand on immoveable bases, which cannot be shaken by theoretical systems. Yet if the consciences of the jury shall be clearly satisfied that the publication was seditiously, maliciously, and wilfully aimed at the independence of the United States, the constitution thereof, or of this state, they should convict the defendant. If on the other hand, the production was honestly meant to inform the public mind, and warn them against supposed dangers in society, though the subject may have been treated erroneously, or that the censures on democracy were bestowed on pure unmixed democracy, where the people *en masse* execute the sovereign power without the medium of their representatives (agreeably to our forms of government) as have occurred at different times in Athens, Sparta, Rome, France, and England, then however the judgments of the jury may incline them to think individually, they should acquit the defendant. In the first instance, the act would be criminal ; in the last, it would be innocent. If the jury should doubt of the criminal intention, then also the law pronounces, that he should be acquitted. 4 Burr. 2552, *per* Ld. MANSFIELD.

Thus have we endeavoured to discharge our official duty to

the jury, with impartiality. It rests with them to discharge their duties, virtuously and conscientiously, agreeably to the true spirit of our constitution and laws.

Verdict not guilty.

In Irvine v. Lumbermen's Bank, 2 W. & S. 190, it is held that the fact that a person called as a juror had formed and expressed an opinion, from the statement of others, of a general state of indebtedness by one party to the other, without any particular knowledge of the facts of the case which he is called to try, does not amount to a good cause of challenge.

Respublica v. Dennie is no longer law: United States v. Watkins, 3 Cr. C. C. 443; Staup v. Com. 74 Pa. 458.